**David I. GARRIS, a/k/a Ronnie Garris, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 81–397, 82–794.

District of Columbia Court of Appeals.

Argued March 30, 1983.

Decided Aug. 4, 1983.

David I. Garris, pro se.

Franklin D. Kramer, Washington, D.C., with whom R. James Woolsey, appointed by the court, Philip P. Frickey, and William R. Hanlon, Washington, D.C., were on briefs, for appellant.

Deborah A. Robinson, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, and

Judith Hetherton, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR and BELSON, Associate Judges, and KELLY, Associate Judge, Retired.[1]

PRYOR, Associate Judge:

This is a consolidated appeal which incorporates both a direct appeal from a judgment of conviction, and an appeal from the denial of a motion for post-trial relief. The direct appeal is presented by counsel, while appellant's challenge to the collateral attack is made *pro se*.[2]

After a trial by jury, appellant was convicted of first-degree premeditated murder, first-degree felony murder (robbery), first-degree felony murder (grand larceny), robbery, grand larceny [items taken from the victim's home], grand larceny of an automobile, and unauthorized use of a vehicle.[3] Appellant was sentenced to imprisonment for three concurrent terms of twenty years to life for the murder convictions. Concurrent to the sentences for murder, the court also imposed sentences of three to nine years for one of the grand larceny convictions and fifteen to forty-five months for unauthorized use of a vehicle. Consecutive to the life sentences appellant was sentenced to two to six years for the second grand larceny conviction and five to fifteen years for the robbery conviction.

Appellant advances the following arguments: (1) that he was denied his right to self representation; (2) that the trial court erred when it denied his motion to suppress certain eyewitness testimony; (3) that there was insufficient evidence to support his murder convictions; (4) that the trial court erred when it gave a missing witness instruction; (5) that the felony murder statute is unconstitutional; and (6) that the trial court erred when it imposed consecutive sentences for two counts of felony murder and for the underlying felonies—robbery and grand larceny. We affirm the convictions but remand the case to the trial court for resentencing.

I.

On September 18, 1980, Kathleen Boyden was reported missing by friends and coworkers. An inspection of her apartment suggested criminal conduct, and on September 23, 1980, her body was found in the rear of her parked and locked car near Rock Creek Park. Evidence at trial showed that Ms. Boyden was murdered in her apartment by several forceful blows with a blunt instrument to her head.

Ms. Boyden was a first-floor resident of the Idaho Terrace apartment building in Northwest Washington, where appellant was employed as a porter. Compelling evidence linking appellant to the crime was introduced by the government. A witness testified that under the guise of having left tools in Ms. Boyden's apartment, appellant requested and received the keys to Ms. Boy-

1. Judge Kelly was an Associate Judge of the court at the time this case was argued. Her status changed to Associate Judge, Retired, on March 31, 1983.

2. Appellant's collateral attack was in the form of a motion to vacate sentence pursuant to D.C.Code § 23–110 (1981), or, in the alternative, for a new trial, pursuant to Super.Ct. Crim.R. 33. In support of his motion, appellant asserted the following arguments: (1) that he was denied his right to a speedy trial; (2) that one of the jurors had "preopinioned views of his guilt;" (3) that the court and counsel considered a note from the jury in his absence; (4) that the identification by one of the government's witnesses was the product of police coercion; and (5) that he was denied his right

to effective assistance of counsel. On May 10, 1982, the trial court denied appellant's motion to vacate sentence or for a new trial. Judge Ugast, in his detailed and comprehensive memorandum order found that appellant's claims "... fail to meet the standard required to merit a new trial based on newly discovered evidence," and that they "... either lack verity, or are vague and conclusory, or even if true do not entitle [appellant] to the relief he requests." We agree with the trial court and do not find any of appellant's claims, with respect to post-trial relief, to warrant reversal.

3. D.C.Code § 22–2401 (1981), *id.* at § 22–2401, *id.* at § 22–2401, *id.* at § 22–2901, *id.* at § 22–2201, and *id.* § 22–2204, respectively.

den's apartment on September 17, 1980. At 6:30 a.m. the following morning, appellant was seen leaving the victim's apartment carrying a women's pocketbook. Shortly thereafter, a young man making newspaper deliveries saw appellant "peer" from the stairwell into the hallway. On that same morning appellant was seen in possession of property that had been stolen from Ms. Boyden. Finally, government witness Renee Carter testified that appellant sought her assistance in concealing the stolen property, and that he then drove Ms. Boyden's car to Rock Creek Park where it was abandoned.

## II.

■ Appellant first contends that the trial court erred when it refused to allow him to represent himself at trial as he had an absolute right to proceed *pro se*. The Supreme Court has held that the Sixth Amendment right to self-representation, when voluntarily and intelligently asserted pre-trial, is absolute, and that a deprivation thereof requires reversal. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).[4] In the instant case, however, appellant made his assertion near the conclusion of the government's case, pursuant to a protracted colloquy among appellant, counsel and the court. The discussion concerned counsel's request to withdraw from the case for fear of placing himself in "jeopardy of suborning perjury." Counsel realized that appellant planned to testify contrary to the way in which he had originally represented his position to counsel. The trial court eventually resolved the matter to appellant's and counsel's satisfaction. Three days later, the matter resurfaced at trial:

THE COURT: Mr. Hoge says you wish to address the Court.

THE DEFENDANT: Yes, sir. The same matter once again. I would like to let the Court know I'm dissatisfied with

counsel and I want the record to reflect that I want counsel out of the case.

THE COURT: That motion is denied. You are in the middle of trial. You are at a critical stage of it and the Court feels that it's essential that the trial proceed. I urge you to cooperate with your counsel.

Counsel for appellant continued to represent his client for the duration of the trial.

■ The right to self-representation, when asserted mid-trial, is not an absolute right. Rather, the trial court must use its discretion and weigh the prejudice to the defendant against any problems of delay, disruption and inconvenience to the trial. *United States v. Dougherty, supra,* note 4, 154 U.S.App.D.C. at 87, 473 F.2d at 1124. *See also Perry v. United States,* 364 A.2d 617, 620 (D.C.1976).

■ Since this problem had previously arisen during the trial, the trial judge was familiar with the nature of the problem and the ethical concerns it presented. Although, as appellant suggests, specific findings were not clearly articulated, the trial judge did make statements in open court to explain how he arrived at his decision. In view of the lack of prejudice to appellant, as evidenced by the record, and the fact that his request came at a critical stage in his trial, we find that the trial court did not abuse its discretion in denying appellant's request for self-representation.

## III.

■ Appellant also challenges the reliability of the eyewitness testimony of Glen Metzdorf, Ms. Boyden's neighbor. He alleges that the trial court erred when it denied his motion to suppress both Mr. Metzdorf's line-up and in-court testimony as having been tainted by unduly suggestive police conduct. In support of his claim, appellant relies on a letter that Mr. Metz-

4. The right to self-representation, even when made pretrial, "... can be lost by disruptive behavior during trial, constituting constructive waiver." *See United States v. Dougherty,* 154 U.S.App.D.C. 76, 87, 473 F.2d 1113, 1124 (1972).

dorf wrote to a friend, shortly after the incident. The letter recounted Mr. Metzdorf's conversations with the police investigators concerning his identification of appellant, and went on to say that "... the detectives were able to get [the witness] to separate [his] suppositions about the murder ... from the simple resemblance or lack thereof of the person [he had] observed on two occasions."

In view of appellant's failure to offer the letter as a suggestivity source at the suppression hearing, his contention on appeal is subject to the plain error standard of review. *Christian v. United States,* 394 A.2d 1, 24 (D.C.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). The witness observed appellant in a well-lit hallway from a distance of less than fifteen feet, and was able to focus on him for three to five seconds. The record, when considered in its entirety, does not support appellant's claim that the police procedures were unnecessarily suggestive, and we cannot therefore say that the conduct complained of is "... so clearly prejudicial to [appellant's] substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc).

## IV.

■ Appellant argues that there was insufficient evidence of premeditation and deliberation to support his first-degree murder conviction.

The appropriate standard of review is "whether there was sufficient evidence from which a reasonable juror could fairly conclude guilt beyond a reasonable doubt." *Head v. United States,* 451 A.2d 615, 622 (D.C.1982). In applying this standard, we do not distinguish between direct and circumstantial evidence. *Id.* *See also Jackson v. United States,* 395 A.2d 99, 102 (D.C. 1978); *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978). We review such claims in the "... light most favorable to the government, giving full play to the right of the jury to determine credibility,

weigh the evidence and draw justifiable inferences of fact." *Hall v. United States,* 454 A.2d 314, 317 (D.C.1982), citing *Byrd v. United States, supra,* 388 A.2d at 1229.

■ The government maintains, and the record reflects, that there was strong circumstantial evidence to suggest that appellant committed the crime with premeditation and deliberation. Appellant, having worked in the apartment building, acquired and used the keys to Ms. Boyden's apartment and removed the screen from the kitchen window for the purpose of reentering her apartment. It is reasonable to conclude that he must have anticipated an encounter with the decedent. There was no evidence to suggest that a frenzied encounter, indicative of an impulsive killing, had taken place. *See Hall v. United States, supra,* 454 A.2d at 317. In fact, appellant methodically folded and placed the victim's blood stained clothing in the closet and further "cleaned-up" after himself to avoid the appearance of a violent confrontation. After killing the victim, appellant put Ms. Boyden's body into the back of her car, and drove the car to an isolated area. Before abandoning the car, appellant first stopped at a friend's house to conceal items which he had stolen from the victim.

Although some time must elapse before deliberation can be found to have existed, there is no fixed time required. *Parman v. United States,* 130 U.S.App.D.C. 188, 197, 399 F.2d 559, 568, *cert. denied,* 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968). Based on the circumstantial evidence in the record, we find that the jury could fairly have concluded, beyond a reasonable doubt, that the crime was committed with premeditation and deliberation.

■ Appellant also argues that there was insufficient evidence of an intent to steal or rob the victim's property to sustain the felony murder, larceny and robbery. We disagree, and find that the above-mentioned evidence of record supports the conclusion that there was sufficient evidence of

an intent to steal or rob the victim's property.

## V.

Appellant next contends that the trial court erred in presenting a missing witness instruction to the jury.

As part of his alibi defense, appellant claimed to have been with someone by the name of "James" from approximately 9:00 p.m. to 10:30 p.m. on the evening of September 17, 1980. Appellant testified that he borrowed a Mercedes Benz automobile from James, as he had frequently done, drove to numerous locations, and, at approximately 2:00 a.m., returned the automobile to 16th and Decatur Streets, N.W., Washington.

At trial, Ms. Carter testified that on the evening of September 17, 1980, appellant was driving a blue Oldsmobile, not a silver Mercedes Benz. She further testified that on the following morning appellant drove a vehicle, which has been identified as Ms. Boyden's car, to 17th Street while Ms. Carter followed in the Oldsmobile.

■ A missing witness instruction is proper provided the testimony would have elucidated the transaction, and the missing witness was peculiarly available to the nonproducing party. *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893); *Wynn v. United States,* 130 U.S.App.D.C. 60, 64, 397 F.2d 621, 625 (1967).

Appellant testified that he had been with James from 9:00 p.m. to 10:30 p.m. on the evening of September 17, 1980, and that he arrived at the nearby National Roller Skating Rink on 16th Street and Kalorama Road at approximately 11:00 p.m. The desk clerk at the Idaho Terrace apartment building testified that appellant requested and received keys to Ms. Boyden's apartment at approximately 11:00 p.m. One of appellant's witnesses testified that he saw appellant at the skating rink between 9:10 and 9:30 p.m., while a second defense witness testified that he saw appellant at the skat-

ing rink as late as 11:15 p.m. James' testimony would have helped to elucidate appellant's whereabouts on the evening of September 17, 1980. Appellant's argument that James' testimony would have been cumulative or that it would not have elucidated the transaction attempts to construe the *Graves* analysis too narrowly and is unpersuasive.

■ Pursuant to Super.Ct.Crim.R. 12.1, the government sought the names and addresses of all witnesses whose testimony would bear on appellant's alibi. James' name did not appear on the list furnished to the government, and the absence of the missing witness' name ". . . is a factor to be evaluated in weighing the government's argument that alibi witnesses are peculiarly available to the defendant." *Dent v. United States,* 404 A.2d 165, 170 (D.C.1979); *Coombs v. United States,* 399 A.2d 1313, 1316–17 (D.C.1979). While appellant testified that he did not know James' surname or address, he did know where James could reliably and regularly be located.

■ The trial court is afforded "considerable discretion" in determining when a missing witness instruction is appropriate. *Harris v. United States,* 430 A.2d 536, 542 (D.C.1981). We find that it was peculiarly within appellant's power to produce James, and that, under the facts of this case, the trial court did not abuse its discretion.

## VI.

■ Appellant argues, for the first time on appeal, that the District of Columbia felony murder statute, codified in D.C. Code § 22–2401 (1981), is unconstitutional as it permits the government to "presume malice," thereby relieving the government of its burden of proving each element of the offense of felony murder beyond a reasonable doubt. We are not bound to decide constitutional challenges that have not been raised below unless we can say that ". . . the statute is so clearly unconstitutional that it should have been ruled upon by the trial court despite the failure of appellant

to raise the point below...." *Robinson v. United States,* 322 A.2d 271, 273 (D.C.1974), citing *Williams v. United States,* 237 A.2d 539, 540 (D.C.1968). We do not so find, particularly in this case where the jury, after being instructed that malice is an element of the offense, found appellant guilty of first-degree premeditated murder.

### VII.

The final question presented is whether the trial court erred when it sentenced appellant for felony-murder (robbery) and felony murder (larceny), as well as for the underlying felonies of robbery and larceny.

 Until recently, this court found no merger between the underlying felony and a felony murder provided the sentences were to run concurrently. The application of concurrent sentences, however, has been held to be improper as a safeguard against "potential collateral consequences." *Doepel v. United States,* 434 A.2d 449, 459 (D.C.), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981). *See also Harling v. United States,* 460 A.2d 571 (D.C.1983). The law in this jurisdiction as stated in *Doepel,* compels us to conclude that the trial court's imposition of sentence was improper. In remanding the case to the trial court for resentencing, we observe that in the instance of a felony murder prosecution, where there is one death, and the jury returns a verdict of guilty as to felony murder and the underlying felony as well, then the court may impose sentence on only one of those charges, but not both. Similarly, where one killing is involved, and the government advances alternate theories of felony murder based upon more than one underlying felony, the accused may not be convicted of more than one felony murder.[5]

*Remanded for further proceedings consistent with this opinion.*

---

5. In a recent case the government recognized and acknowledged this problem. *Eugene Dixon v. United States,* —— A.2d —— No. 82–817

(D.C. July 21, 1983) (memorandum opinion and judgment). *See* government's brief, note 24.