Jeffrey **OXNER**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 09–CF–224.

District of Columbia Court of Appeals.

Submitted Feb. 3, 2010.

Decided May 13, 2010.

---

Bruce A. Johnson, Jr., Bowie, MD, was on the brief for appellant.

Channing D. Phillips, Acting United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, Mond Sahaf, and Erin B. Andrews, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges.

GLICKMAN, Associate Judge:

Appellant Jeffrey Oxner entered a conditional guilty plea to unlawful distribution of cocaine, reserving the right to appeal the denial of his motion to suppress his show-up identification. Appellant argues that his identification should have been suppressed as the fruit of an illegal warrantless entry into his home. We disagree. The police acquired sufficient information to justify appellant's detention for the show-up identification before they entered his abode to seize him; they did not rely on any information gained during that entry. Under prevailing Fourth Amendment doctrine, appellant's identification therefore was not tainted by the putative illegality of the warrantless intrusion. Accordingly, we affirm appellant's conviction.

## I.

The relevant facts, elicited in an evidentiary hearing on appellant's suppression motion, are not in dispute. On the afternoon of March 3, 2006, a team of Metropolitan Police Department undercover officers conducted a "buy-bust" narcotics operation in Southeast Washington, D.C. Posing as interested buyers, Officers Marvin Washington and Carol Turner approached Valerie Williams on Wheeler Road and asked her if anyone was selling drugs. Williams introduced them to Brian Washington, who said "his man" was selling drugs on Valley Avenue. Williams and Brian Washington led the two undercover officers to the third floor of an apartment building at 1201

Valley Avenue, S.E. The officers waited with Williams in the stairwell while Brian Washington entered Apartment 301. After a few minutes, he came out of the apartment with appellant. In the transaction that followed, Officer Washington handed $30 to Williams, who passed it to Brian Washington, who gave it to appellant in exchange for two ziplock bags of cocaine. Brian Washington handed the bags to Officer Washington. Everyone but appellant then left the building.

Officer Washington promptly went to the undercover police car that had been following his movements. From there he directed an arrest team to Apartment 301 and described the person to be apprehended there as a black, heavy-set male, about 6'1" or 6'3" tall, wearing blue jeans, a long-sleeve black T-shirt, and tan Timberland boots. Within minutes, three police officers arrived at the apartment. In response to their knock, a woman opened the door and the officers observed appellant standing approximately two feet inside. The officers, who were still in the hall, recognized that appellant matched the description given by Officer Washington. The officers then entered the apartment and told appellant he would have to come with them. Neither of the occupants consented to the intrusion. The police escorted appellant downstairs and walked him past the undercover police vehicle. Officers Washington and Turner positively identified appellant and he was placed under arrest.[1]

Appellant moved to suppress his show-up identification as the fruit of a Fourth Amendment violation, namely the warrantless, nonconsensual entry into his home. After an evidentiary hearing, the trial judge denied the motion. Although the judge rejected the government's argument that exigent circumstances existed to justify intrusion without a warrant,[2] he ruled that the police acted lawfully. Given the "detailed lookout, including that the person described was in Apartment 301," the judge concluded that "simply stepping across the threshold for a *Terry*[3] stop [to pursue] an on-scene ID was entirely reasonable.... Saying to the police ... you just have to stand there and try to coax the person out just didn't ... make sense."

## II. Analysis

Appellant contends the police violated his Fourth Amendment rights by entering his home without a warrant or consent in order to seize him there, and that this violation required suppression of the ensuing show-up identification outside the home by the officers who conducted the undercover drug purchase. The government argues that the warrantless entry was justified by exigent circumstances, and that even if it was not, appellant's identification was not excludable as a fruit of the illegality. We agree with the government's second argument and do not reach the first.[4]

■ The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home

---

1. Williams and Brian Washington also were detained, identified, and arrested.

2. *See generally Dorman v. United States*, 140 U.S.App. D.C. 313, 435 F.2d 385 (1970) (en banc).

3. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

4. Our review is de novo with respect to whether the claimed Fourth Amendment violation requires suppression of the show-up identification of appellant. *See Brown v. United States*, 590 A.2d 1008, 1020 (D.C. 1991).

in order to make a routine felony arrest." [5] In *New York v. Harris*,[6] the Supreme Court considered whether the exclusionary rule required suppression of evidence (a confession, in that case) obtained from an arrestee by the police after they removed him from his home following such a violation. The answer to that question, the Court said, depended on whether the police had probable cause to make the arrest *prior to* their unlawful intrusion. If so, the Court reasoned, then notwithstanding the illegality of the arrest inside the home, the arrestee's subsequent detention outside the home was lawful,[7] and the evidence then obtained from him therefore was "not the product of being in unlawful custody." [8] Accordingly, unlike evidence obtained inside the home or derived from information gained there, Harris's subsequent confession was "not the fruit of the fact that the arrest was made in the house

rather than someplace else." [9] As the confession was "not an exploitation of the illegal entry into [the arrestee's] home," the exclusionary rule did not require its suppression.[10]

■ *Harris* involved a confession, but its analysis applies to other forms of evidence—including eyewitness identifications. Like a confession, an identification of a suspect procured during his lawful detention outside the home is not subject to suppression merely because the suspect was seized inside the home in violation of the Fourth Amendment warrant requirement.[11] For the detention to be lawful, it must be justified by evidence independent of the constitutional violation of warrantless entry; it cannot be based on new information obtained inside the home as a result of the illegal intrusion.[12] Although

5. *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

6. 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).

7. *Id.* at 18, 110 S.Ct. 1640 (citing *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), for the proposition that a defendant is not "immune from prosecution because his person was the fruit of an illegal arrest"). As the Court added, the illegality of Harris's warrantless arrest in his home did not require the police to release him after his removal from the premises, nor would it have precluded the police from immediately rearresting him had he been released. *Id.*

8. *Id.* at 19, 110 S.Ct. 1640.

9. *Id.* at 20, 110 S.Ct. 1640.

10. *Id.* at 19, 110 S.Ct. 1640.

11. *See* 6 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 11.4(g), at 47 n. 358 (4th ed. 2004) ("An arrest without probable cause must be distinguished from an arrest made with probable cause but without a warrant when a warrant was required because the arrest was made within private premises. In such a case, by

analogy to *New York v. Harris* ... identification information obtained later at the station need not be suppressed.") (citations omitted). *See, e.g., Mosby v. Senkowski*, 470 F.3d 515, 523–24 (2d Cir.2006) (refusing to suppress lineup identification where the police had probable cause to arrest the defendant and the lineup was not prompted by the warrantless arrest at his home or by anything the police discovered inside the home); *United States v. Villa–Velazquez*, 282 F.3d 553, 556 (8th Cir.2002) (observing that police should not have to release and rearrest the defendant to preserve post-arrest identity information); *People v. Jones*, 2 N.Y.3d 235, 778 N.Y.S.2d 133, 810 N.E.2d 415, 420–22 (2004) (holding lineup identification admissible despite Fourth Amendment violation where the arrest was based on probable cause).

12. *Cf. Bryant v. United States*, 599 A.2d 1107, 1112 (D.C.1991) ("[B]ecause the evidentiary predicate for appellant's detention was *dependent* on the constitutional violation [of warrantless entry and seizure], the subsequent [show-up] identification made during that detention must be excluded as a derivative fruit of the prior illegal entry."); *Junior v. United States*, 634 A.2d 411, 420 (D.C.1993) (finding that warrantless entry into a home without

the detention in *Harris* was a custodial arrest based on probable cause, under *Terry* a limited investigative detention of a suspect short of an arrest may be justified on less than probable cause by reasonable articulable suspicion. *Harris's* principles apply equally to such a detention, so long as it is based on information acquired by the police prior to their warrantless entry. Thus, under *Harris*, a show-up identification or other evidence obtained during such a lawful investigative detention is deemed not to be a suppressible "fruit" of the illegal intrusion.[13]

■■■ These principles govern the present case. The police did not conduct an unreasonable search or seizure in contravention of the Fourth Amendment merely by knocking on the door of appellant's apartment and looking in from the hallway after the door was opened. At that point, before they crossed the apartment threshold without a warrant or consent, the officers saw a man matching the detailed description of the seller standing inside the apartment from which, only minutes earlier, the seller had emerged with the drugs. That correspondence of description, time and location provided at least reasonable suspicion to justify an investigative detention of the man—appellant—for purposes of a show-up identification (as the trial judge concluded),[14] if not probable cause to arrest him then and there.[15] Appellant therefore was in legal custody when he was shown to Officers Washington and Turner, and their identifications of him were not excludable as the fruit of the warrantless and nonconsensual entry into his home, even if that intrusion was not supported by exigent circumstances.

*Affirmed.*

RUIZ, Associate Judge, concurring:

I agree that appellant was not entitled to suppression of the undercover officer's identification of appellant as the person who sold him the drugs in an undercover transaction and that his conviction, therefore, should be affirmed. I do so based on a straightforward application of *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), where the Supreme Court held that:

> where the police have *probable cause* to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton.*

*Id.* at 19, 110 S.Ct. 1640. (Emphasis added).

---

probable cause rendered show-up identification evidence suppressible).

**13.** The concurrence describes this conclusion as an extension of *Harris*. Not so. It is a straightforward application of the Supreme Court's rationale in that case. The logic of *Harris* turns simply on whether there exists untainted legal justification for the detention of the suspect outside the home, not on whether that justification amounts to probable cause as opposed to reasonable suspicion. If the level of detention equates to that of an arrest, as was the case in *Harris*, then probable cause is the required legal justification; but investigative detentions short of an arrest,

such as appellant's detention in this case, require only reasonable suspicion to be valid.

**14.** *See Bryant*, 599 A.2d at 1111 n. 8. The trial judge erred, however, in thinking that it justified a warrantless, nonconsensual entry in the absence of exigency.

**15.** In his brief on appeal, appellant—surprisingly—concedes that the police had probable cause to support his arrest prior to the show-up identification. We do not rely on this concession. It is immaterial under *Harris* whether there was probable cause as opposed to reasonable suspicion—either way, appellant's detention was justified.

In this case, the police seized appellant after making a warrantless entry into the home he shared with his fiancée and took him out to the street so that he could be seen by the undercover officer who then identified him. The majority opinion argues that *Harris's* logic applies equally and should be extended to a situation where the police had reasonable articulable suspicion to seize (but not probable cause to arrest) the suspect independent of the warrantless entry into the home where only a seizure has taken place inside the home. The majority cites no case authority for this proposition.

We do not need to reach that issue because it is not presented in the case before us. Here, appellant has conceded that the police had probable cause. Although the trial court appears to have had some doubt on the issue of probable cause, we are not bound by the trial court's determination on the ultimate legal question of probable cause *vel non*, and nothing in our cases suggests that appellant has made an improvident concession that the court should not accept. *Compare Best v. United States*, 582 A.2d 966, 968–69 (D.C. 1990) (holding that hearing on motion to suppress was unnecessary because trial evidence was "ample" to establish probable cause where defendant was arrested based on a description of suspect as "wearing a baseball-style cap with a star on it, black jacket, gray jeans and tennis shoes ... and the street location where [suspect] was hiding his supply of cocaine behind a basement wall"), *and Glass v. United States*, 395 A.2d 796, 803–04 (D.C.1978) (holding there was probable cause to arrest where defendants were in a car that was stopped "a few minutes" after robbery in a car "about five or ten blocks" from where robbery occurred, car was heading away from the scene of the crime and had run a red light and car's occupants matched "descriptions of the suspects"—"height,

weight, color, facial hair, length of hair, stringy hair and all that sort of stuff" even though there was significant discrepancy in height of one of the suspects), *with Junior v. United States*, 634 A.2d 411, 419–20 (D.C.1993) (holding there was no probable cause and *Harris* would not apply because a "central" component to establish probable cause was obtained as a result of the illegal entry into the home, *i.e.*, discovery of the suspect's presence in the place where the undercover drug purchase had taken place). In our case, not only did appellant match the description given in the lookout as to gender, height, build, race and clothing, but also he was seen—from outside the door—in the same apartment from which the drug dealer had emerged, just a few minutes after the undercover drug purchase. This case, in other words, is more like *Best* and *Glass*, where we concluded there was probable cause, than to *Junior*, where we concluded there was not.

In *Harris*, a five-justice majority of the Supreme Court declared that the exclusionary rule did not apply because the suspect's statement at the station house was not the "product" of an unlawful detention or the "fruit" of the officer's unlawful warrantless entry into the home. 495 U.S. at 19, 110 S.Ct. 1640. The Court majority reasoned that because the officers already had probable cause, they could have waited for Harris to emerge from his home and arrested him on public space and then taken him to the police station for interrogation. *Id.* at 18, 110 S.Ct. 1640. Four justices filed a vigorous dissent contending that the majority's *per se* rule ignored the flagrant nature of the constitutional violation and avoided the Court's longstanding fact-based attenuation analysis to determine whether evidence should be excluded as the "tainted fruit" of the constitutional violation. By

essentially looking past the constitutional violation and its effect on the evidence sought to be suppressed, the dissenters argued, the majority undermined the "principal purpose of the Fourth Amendment's exclusionary rule [ ] to eliminate incentives for police officers to violate that Amendment." 495 U.S. at 22, 110 S.Ct. 1640 (Marshall, J., joined by Brennan, Blackmun and Stevens, JJ, dissenting).

We are, of course, bound to follow the Court's constitutional rulings, and that is what I propose we should do: to follow *Harris* according to its terms, where the police, as here, had probable cause. But I would not go further. The Court has not ruled on the precise issue that the majority decides, that mere reasonable articulable suspicion also suffices to overlook a constitutional violation so long as the police could have seized the suspect outside the home. That conclusion might well be, as the majority argues, a logical extension of the reasoning of *Harris*, but taking an argument to its logical end might stretch too far and should yield to the imperative to safeguard constitutional rights and deter constitutional violations that the exclusionary rule was designed for. It is a step, moreover, that appears other courts have not been willing to take—even twenty years after *Harris* was decided—as the majority cites no case or other authority that extends *Harris* to similarly except application of the exclusionary rule to situations where there has been a warrantless entry into a home so long as the police officers had only reasonable articulable suspicion to stop the suspect outside the home. Nor has the government made that argument in this appeal; instead, it bases its case for affirmance on the officers' having independent probable cause to arrest appellant, as in *Harris*.[1]

In short, the existence of probable cause is not in contention, the government has not made the argument on which the majority relies, the issue has not been briefed or presented at oral argument (the appeal was not argued), and there appears to be no controlling or even persuasive authority for extending *Harris* to situations where there is only reasonable articulable suspicion. In these circumstances, I resist reaching to decide that the exclusionary rule does not apply at all so long as the police have reasonable articulable suspicion—the lowest form of justification under the Fourth Amendment—even when there is a violation of the Fourth Amendment's clear injunction against warrantless entries into the home—"the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *see Harris,* 495 U.S. at 17, 110 S.Ct. 1640 ("It is also evident, in light of *Payton* that arresting Harris in his home without an arrest warrant violated the Fourth Amendment."). To do so is unnecessary and, in my view, unwise.

For these reasons, I concur that the conviction should be affirmed but do not join the opinion for the court.

---

1. Indeed, the government's principal argument on appeal is that the warrantless entry into the home was justified because probable cause entitled the officers to enter the home without a warrant due to "exigent circumstances"—the "imminent" loss of evidence (drugs and pre-recorded funds used in the undercover purchase) and possible escape of the suspect—citing *Dorman v. United States,* 140 U.S.App. D.C. 313, 435 F.2d 385 (1970) (en banc) (*cited in United States v. (Mark) Harris,* 629 A.2d 481, 486 (D.C.1993)). The trial court rejected that rationale, but concluded that "simply stepping across the threshhold for a *Terry* stop for an on-scene ID was entirely reasonable." Neither the majority nor I rely on the trial court's reasoning or on the government's principal argument.